Nicholas M. Pette, J.
Monarch Marking System Company (hereinafter.- Monarch), as alleged owner, applies for an order directing the assignee to turn over and deliver to it all the machinery specified in the moving affidavit herein.
*754 It appears that by an agreement dated November 29, 1961, Monarch leased to Merkel, Inc., five items of machinery at semiannual rentals of $912 with a specified purchase option at the end of five years for the additional sum of $800. Arithmetic computation discloses that the gross rental for the five-year period is $9,120, so that the purchase option price of $800 represents somewhat less than 10% of the total rental. It is admitted that this agreement was not recorded.
There appears to be no question that said agreement by definition (Personal Property Law, § 61) and the pertinent cases is a “ conditional sale ” agreement.
Under section 1-201 of the Uniform Commercial Code the assignee points out that said lease agreement is in fact a security interest in personal property or fixtures, defined as follows: “§1-201. * * * (37) ‘ .'Security Interest ’ means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2-401) is limited in effect to a reservation of a ‘ security interest ’. * * * Whether a lease is intended as
security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.” (Emphasis supplied.)
The movant urges that (1) an unrecorded conditional bill of sale was always good against an assignee for the benefit of creditors, and (2) the currently enacted Uniform Commercial Code excepts the unrecorded transaction from its effect for a period of 12 months after the effective date (Sept. 27, 1964) of the new code. He cites the following cases in support of this contention (Matter of Pellegrini, 248 App. Div. 526; Matter of Lloyd-Stuart Co., 256 App. Div. 965; Matter of Hershcopf Food Corp., 160 N. Y. S. 2d 695; Matter of Caruso-Sturcey Corp., 200 Misc. 936; Matter of Randy’s Super Foods, 6 Misc 2d 585).
The Uniform Commercial Code became effective ¡September 27, 1964 (§ 10-105) and repealed all of article 4 of the Personal Property Law which, by definition, made the subject leasing agreement at bar a “ conditional sale ” and regulated its filing, etc.
It appears that by section 10-102 of the Uniform Commercial Code,
*755 “ Transactions validly entered into before the effective date * * * of this Act and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law repealed or modified by this Act as though such repeal or modification had not occurred; provided, however, that the perfection of a security interest, as defined in this Act (Section 1-201) and however denominated in any law repealed by this Act,
“ (a) which was perfected when this Act takes effect by a filing, refiling or recording under a law repealed by this Act and requiring a further filing, refiling or recording to continue its perfection, continues until and will lapse on the date provided by the law so repealed for such further filing, refiling or recording;
“ (b) which was perfected when this Act takes effect by a filing, refiling or recording under a law repealed by this Act and requiring no further filing, refiling or recording to continue its perfection, continues until and will lapse twelve months after the date this Act takes effect;
“ (e) which was perfected when this Act takes effect without any filing, refiling or recording * * * continues until and will lapse twelve months after this Act takes effect;
‘ ‘ unless, in each case, a continuation statement is filed by the secured party within twelve months before the perfection of the security interest would otherwise lapse.”
The movant contends that its rights under this leasing agreement were not disturbed by the Uniform Commercial Code, since no filing or any affirmative act is required for the gross period of 12 months to expire September 27,1965.
The movant further contends that if the original right of the lessor for a return of its chattels from the assignee is recognized and it is established that the new Uniform Commercial Code affirmatively states that such right is not disturbed, it then becomes clear that the motion at bar ought to be granted directing the assignee to turn over to the movant the subject chattels.
This court is of the opinion that the lease agreement involved herein is in law a “ security interest ” within the purview of section 1-201 of the Uniform Commercial Code.
Matter of New York World-Tel. Corp. v. McGoldrick (298 N. Y. 11), although preceding the adoption of the Uniform Commercial Code, is, nevertheless, applicable. There the court, in construing a lease as a conditional bill of sale, imposed the following test (p. 18): “ The agreement is cast in the form, style and language of a lease, but we must look to the rights it confers and the obligations it imposes to determine whether it has the *756 essential attributes of a contract of conditional sale or of an installment sale (Central Union Gas Co. v. Browning, 210 N. Y. 10). If the conditional vendee has possession of the chattel, is obligated to pay for it and, having paid, becomes or has an option to become the owner of it, the vendor retaining’ the right to retake the goods if the conditional vendee defaults in his obligation to pay for them, there is a conditional sale (Central Union Gas Co. v. Browning, supra; Gardner v. Town of Cameron, 155 App. Div. 750, affd. 215 N. Y. 682; Ohl & Co. v. Standard Steel Sections, Inc., 179 App. Div. 637; Equitable General Providing Co. v. Eisentrager, 34 Misc. 179).” (To the same effect see: Matter of Harold Radio & Electronics Corp., 327 F. 2d 564; Matter of Midwest Airmoving Corp., 184 F. Supp. 474; Matter of Crown Cartridge Corp., 220 F. Supp. 914; Burroughs Adding Mach. Co. v. Bogdon, 9 F. 2d 54.)
It appears that the assignee had no notice of the security interest of the movant when he qualified herein as assignee, and since the lease admittedly was not filed or recorded, said lease, in law, is an unperfected security interest which is subordinate to the rights of the assignee.
Section 9-301 of the Uniform Commercial Code entitled ‘ ‘ Persons Who Take Priority Over Unperfected Security Interests; ‘ Lien Creditor ’ ” in pertinent part provides:
“ (1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of
“ (a) * * *
“ (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected;
“ (3) A' lien creditor’ * * * means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment * * *. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.” (Emphasis supplied.)
Obviously, the rights of the moving party in the unperfected security interest herein involved are clearly subordinate to the rights of the assignee who has intervened to become the custodian and owner of the property at the time of the assignment for the benefit of creditors.
Upon all the facts elicited from the papers submitted on the instant application, pro and con, this court is of the opinion that the movant’s application must be denied.
The movant’s application is denied.